## Case No. 3,277.

### COULTER v. L'ESPERANZA.

[Bee, 97.] [1]

District Court, D. South Carolina.  March Term, 1799.

#### PROCEEDS OF SALE IN ADMIRALTY.

Money or goods in the hands of the marshal by order of this court are subject to any further order of court; and claim may be made to the same, after a decree. Not so, if the money has been paid over.

[Cited in British Consul v. Thompson, Case No. 1,899; Leland v. The Medora, Id. 8,237.]

BEE, District Judge.  After sale under the preceding decree, but before the marshal had paid over the money, the present claimant Joseph Coulter interposed a petition, stating that he was an American citizen of Philadelphia, and sole owner of the cargo of the Esperanza, the same having been purchased at an out-port and captured in its way to the Havanna. He prayed leave to file a claim and produce proofs in order to manifest his right to the said cargo; and that the marshal might be ordered to hold the proceeds in his hands, subject to the future order of the court. This was done; and a commission issued to take his claim and answer, and examine witnesses in support of it.  On the return of these papers it appeared beyond a doubt that the said Coulter was an American citizen, and that the cargo of the Esperanza, consisting of eighty-four hogsheads of molasses, were his property at the time of the capture.

On this claim and these proofs, counsel were heard for the said Coulter in support of his claim; and for the British consul on behalf of the owners of the privateer.

For the latter it was contended, that the court has already pronounced its decree in this cause, and cannot review or alter it. That the question of prize or no prize can only be determined in a court of the captors. That the sale by consent of the parties to the decree ought not to injure their rights, but that the monies arising from the sale of the cargo should be considered as the cargo itself would have been before the sale.  And the British consul offered to retain the proceeds of sale till the question could be tried in a court of admiralty of Great Britain. That the decree was not interlocutory, but final; that, as such, it secured those who purchased under it; and that the 25th article of the treaty with Great Britain deprived this court of further jurisdiction.

On the other side it was insisted, that this vessel was not, on her arrival here, in possession of the British, but had been abandoned at sea, and brought in by an American captain; that, therefore the British treaty did not apply.  That the claimant would be without remedy, except in this court.  That the rights of a third person being involved, the court may review the decree.

The case appears to me important, and I have considered it with much attention.  I am of opinion that decrees of this court, completely carried into effect, can only be affected by appeal to a higher tribunal.  But it has long been settled that the court may control its officers, and that money in their hands by order of the court is subject to further order thereof, until paid over.  That parties concerned who had no notice of the proceedings are entitled to a hearing, more especially as they have no right to appeal. Coulter would, I apprehend, be altogether without remedy, if this court does not give it to him.  I do not see how a British court of admiralty could hold jurisdiction of this vessel after abandonment; for neither res nor persona is within its reach.  The libel for salvage brought this subject properly before this court in the first instance; and it is an established principle that matters necessarily flowing from or dependent upon the first cause of action shall follow the original rights of jurisdiction.  Hopk. 140.  If I had referred the American captain's claim for salvage to a British court, I should have yielded up the powers of this.  The Esperanza was brought in here as abandoned; as such, the court interfered to settle the claims of the different parties.  The question of prize was cautiously avoided.  Had Coulter's claim been brought forward at first, no doubt could have attached to it; for, by our treaty with Great Britain, the goods of either party found on board the vessel of an enemy shall be restored.  To have decreed, therefore, restitution of this cargo to Coulter would have been no more than a fulfilment of that treaty.

Upon the whole, I adjudge, order, and decree, that Coulter receive the money for which his molasses sold, after deducting the salvage allowed by my former decree, the costs of both suits, and a reasonable freight. Let this be fixed by the registrar and one or two merchants, if he thinks proper to call for their assistance; and let the freight and amount-sales of the vessel be paid to the British consul for the benefit of those entitled to the same.